UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>MEDIATEK, INC. and MEDIATEK USA, INC.,<br><br>      Defendants. | Case No. 7:24-cv-00029-DC-DTG |

**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. DISPUTED TERMS ......................................................................................................... 1

    A. "each processor core from the first/second set of processor cores is *configured to dynamically receive* a first/second supply voltage [from a power control block] and a first/second output clock signal" (Claims 1, 21) ......... 1

    B. "one or more control blocks located in a periphery of the multi-core processor" (Claim 5) ................................................................................................ 4

    C. "common region that is substantially central to the first set of processor cores and the second set of processor cores" (Claim 14) ........................................ 5

III. CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
  811 F.3d 1334 (Fed. Cir. 2016) ................................................................................................ 7

*Cellular Comm'ns Equip. LLC v. LG Elec., Inc.*,
  No. 6:14-cv-982, 2016 WL 2808887 (E.D. Tex. May 13, 2016) ..................................... 4, 5, 8

*Cuozzo Speed Techs., LLC v. Lee*,
  579 U.S. 261 (2016) ................................................................................................................ 3

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
  438 F.3d 1374 (Fed. Cir. 2006) ............................................................................................... 6

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*,
  936 F.3d 1353 (Fed. Cir. 2019) ............................................................................................... 6

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
  No. CV 13-1668-LPS, 2016 WL 4363485 (D. Del. Aug. 12, 2016) .................................. 3, 5, 8

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
  902 F.3d 1372 (Fed. Cir. 2018) ............................................................................................... 4

*Liberty Ammunition, Inc. v. United States*,
  835 F.3d 1388 (Fed. Cir. 2016) ........................................................................................... 2, 6

*Merck & Co. v. Teva Pharm. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ............................................................................................... 7

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
  30 F.4th 1339 (Fed. Cir. 2022) ................................................................................................ 6

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ............................................................................................... 7

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017) ............................................................................................... 6

**Codes**

35 U.S.C. § 311(b) ......................................................................................................................... 3

**I.     INTRODUCTION**

As set forth in MediaTek's Opening Brief (Dkt. 29), the disputed claim terms use indefinite language not described in the specification and fail to inform a person of ordinary skill in the art (a "PHOSITA") about the scope of the claimed invention with reasonable certainty. Redstone's proposed constructions in its Responsive Brief (Dkt. 31) lack intrinsic support and cannot save the terms from indefiniteness.

**II.    DISPUTED TERMS**

**A.     "each processor core from the first/second set of processor cores is *configured to dynamically receive* a first/second supply voltage [from a power control block] and a first/second output clock signal" (Claims 1, 21)**

| MediaTek's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefinite | Needs no construction; plain and ordinary meaning |

Redstone erroneously argues that the phrase "configured to dynamically receive" is understandable because the patent specification teaches "dynamically providing voltage and clocks." Resp. Br. at 2. In citing this portion of the specification, Redstone tacitly concedes that the term "dynamically" only appears in limited instances in the intrinsic record, but only in contexts unrelated to the phrase at issue. *Id.* Such irrelevant discussions cannot resolve the ambiguity inherent in the phrase.

As an initial matter, Redstone's reliance on the disclosure of "dynamically adjusting the power profile for a stripe in response to changes in computational requirements may reduce power consumption for a multi-core processor" (*id.* (citing '339 Patent at 3:16-20)) is misplaced. As the quoted language indicates, this discussion concerns power profile adjustments performed by control blocks, which is distinct from the dynamic receipt of a supply voltage and an output clock

signal by a processor core, and provides no insight on how the processor core can be "configured" to enable such dynamic receipt.

Redstone then relies on a cited publication that generally discusses "how to manage this dynamic change" in the context of "power consumption" "with two supply voltages." Resp. Br. at 2 (citing Cheng (Dkt. No. 31-2)). This publication merely provides an overview of the background art in the context of power consumption management through "[s]witching between power supplies … dynamically." This disclosure again says nothing about the dynamic receipt of a voltage and clock signal by a processor core, or how to configure the processor core to enable such dynamic receipt. *Id.* Indeed, Redstone's only brief confirms that the '339 Patent does not convey the meaning of the phrase "configured to dynamically receive" whatsoever, let alone with reasonable certainty.

The phrase "configured to dynamically receive" is a term of degree, as "it necessarily calls for a comparison against some baseline." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395 (Fed. Cir. 2016). "Terms of degree are problematic if their baseline is unclear to those of ordinary skill in the art." *Id.* As noted in MediaTek's Opening Brief, there are no clues within the patent as to how the received signals are "dynamic," which has no understood baseline. A PHOSITA could understand the phrase to connote changes from a specific threshold rate (e.g., in time, voltage levels, frequencies, etc.), an absolute static condition, or the supply voltage and clock signal output to the receiving processor core, which themselves may be changing. Op. Br. at 5-6. The intrinsic record establishes no criteria to determine which condition applies here or how to measure changes therefrom, and Redstone's brief does not and cannot show otherwise.

Further, the term "configured to dynamically receive" is tacked on to the processor core without any context being provided for what configuration makes its claimed "receiving" function

performed dynamically. Op. Br. at 6. Redstone strains to save this phrase through a deviation from the claim language, construing the phrase to simply connote "a changing signal," as opposed to referencing a certain configuration that enables a processor core to receive signals dynamically. Resp. Br. at 2-3. But a PHOSITA would not have understood to apply such a deviation. Dkt. 29-1, Baker Decl., ¶¶ 40-41. There can be no dispute that the patent is completely silent as to any "configuration" needed for the claimed processor core to "dynamically receive" a supply voltage and clock signal.

Redstone also argues that MediaTek has taken inconsistent positions due to its positions in an IPR challenging the '339 Patent on Sections 102 and 103 grounds, supported by Dr. Baker's declaration in the IPR proceeding. MediaTek's positions are not inconsistent. As the Court is well aware, indefiniteness cannot be raised as a ground of invalidity by a petitioner in IPR. 35 U.S.C. § 311(b); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275 (2016) (Patent Office would be acting "outside its statutory limits" by "canceling a patent claim for 'indefiniteness under § 112' in inter partes review."). For this reason, district courts have rejected the same argument that Redstone makes here. For example, in *Intellectual Ventures I LLC v. AT&T Mobility LLC*, Judge Stark of the U.S. District Court for the District of Delaware (now of the U.S. Court of Appeals for the Federal Circuit) noted:

> Throughout the briefing, Plaintiffs attempt to defend their patent claims from attacks of indefiniteness by pointing out that one or more of the Defendants proposed constructions of the disputed claim terms during IPR proceedings. The Court is unpersuaded by this argument. The PTAB does not consider whether a claim is indefinite. See 35 U.S.C. § 311(b). The fact that Defendants proposed constructions in order to facilitate IPR challenges on grounds of obviousness and anticipation is not a concession that a POSA would arrive at those constructions with "reasonable certainty."

No. CV 13-1668-LPS, 2016 WL 4363485, at *9 n.8 (D. Del. Aug. 12, 2016) (internal citations omitted), *aff'd in part, vacated in part for other reasons, remanded sub nom*. *Intellectual Ventures*

3

*I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372 (Fed. Cir. 2018); *see also Cellular Comm'ns Equip. LLC v. LG Elec., Inc.*, No. 6:14-cv-982, 2016 WL 2808887, at *9 (E.D. Tex. May 13, 2016) ("CCE's arguments regarding representations made during IPR are not applicable here because a petitioner may not challenge claims on the basis of indefiniteness during IPR).

> **B.      "one or more control blocks located in a periphery of the multi-core processor" (Claim 5)**

| MediaTek's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefinite | Needs no construction; plain and ordinary meaning |

Redstone attempts to salvage the disputed term with an ill-conceived analogy to the "outdoors," but this comparison falls apart under scrutiny. Resp. Br. at 4. Unlike the term "outdoors," which is anchored to a commonly understood boundary, a "door," the physical bounds of the multi-core processor are left dangling in ambiguity.

Redstone's attempts to fill this void fail. Redstone seeks to rely on disclosures in the specification citing to Figure 1. Resp. Br. at 4 ("This shows where the edges of the multi-core processor are, with the control blocks described at the edge of the multi-core processor."). In doing so, Redstone vaguely indicates that the term "multi-core processor" should be interpreted as the individual cores. However, the specification also provides that the configuration of the multi-core processor illustrated in Figure 1 "may" include additional circuitry including "interface circuit[s]," and "wrap-around connection[s]" without specifying the physical location of such circuitry. If anything, the specification confirms that the term "multi-core processor" may be construed in different ways—as the individual cores, but also as a more complete integrated circuit containing both the cores and additional circuitry. Each interpretation leads to different boundaries for defining the multi-core processor's "periphery." As such, the scope and boundary of a multi-core processor is vague, ambiguous, and unascertainable in light of the patent.

Second, unlike "outdoors," which carries an inherent binary clarity, "periphery" invites subjective interpretation—does the term "periphery" require a location immediately adjacent to the boundary of the multi-core processor, or does it include areas further away and, if so, how far? Does "periphery" include areas partially or entirely inside the multi-core processor and, if so, how is it measured to be distinguished from a "substantially central" location of the multi-core processor? Redstone has no answer to these critical questions for a PHOSITA, making no contention as to the scope of the boundary or "edge" of the multi-core processor, because it cannot.

Lastly, Redstone again tries to discount MediaTek's indefiniteness argument based on its IPR positions. Resp. Br. at 5-6. This Court should reject Redstone's argument that MediaTek's indefiniteness position in this litigation is somehow inconsistent with its IPR Petition. The reasoning in *Intellectual Ventures* and *Cellular Communications Equipment* applies here: Congress specified in § 311(b) what invalidity grounds the PTAB could consider in an IPR, and indefiniteness was not one of them.

### C. "common region that is substantially central to the first set of processor cores and the second set of processor cores" (Claim 14)

| MediaTek's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Indefinite | Needs no construction; plain and ordinary meaning |

This disputed term is indefinite because it fails to inform a PHOSITA with reasonable certainty at least with respect to the scope of a "common region." In its attempt to save the term from indefiniteness, Redstone tries to replace "common" with "overlapping." Resp. Br. at 7-8. Redstone identifies the portion of the specification that discusses the spatial arrangement of processor cores, which uses the word "overlapping," but ignores the remainder of the intrinsic record. *Id.* (citing '339 Patent at 2:20-23). As discussed in the Opening Brief, unasserted dependent Claim 8 demonstrates that the inventors understood "overlapping" to have a different

5

meaning than "common." Op. Br. at 14-15. The inventors knew how to draft claims incorporating the term "overlapping," yet still chose to draft Claim 14 to require a "common region," showing that a "common region" cannot be defined to mean "overlapping" as Redstone proposes. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). Redstone has offered nothing to overcome the presumption of claim differentiation. Resp. Br. at 8 ("Even if claim differentiation could result in indefiniteness, claim differentiation is inapplicable."). Redstone merely creates a circular argument that presupposes that the term is definite and has a plain and ordinary meaning.

Even assuming Redstone's construction of the phrase "common region," indefiniteness separately arises from the phrase "substantially central." Redstone agrees that "substantially central" is a term of degree, Resp. Br. at 8-9, which "necessarily calls for a comparison against some baseline." *Liberty Ammunition*, 835 at 1395. In using a term of degree, the patent "must provide objective boundaries for those of skill in the art in the context of the invention to be definite." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339 (Fed. Cir. 2022) (internal citation and quotation marks omitted). The written description is "*key* to determining whether a term of degree is indefinite." *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1361 (Fed. Cir. 2019) (emphasis in the original) (quoting *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017). Redstone points to no guidance regarding the scope of "substantially central" in the specification, because there is none. Resp. Br. at 8-9. Indeed, the terms "central" and "substantially central" are never used in the specification.

Redstone seeks to rely solely on the embodiment illustrated by Figure 1, stating that because there the specification purportedly describes "three possibilities" of "periphery" locations referring to the sides of the multi-core processor, "[a] POSITA would understand by contrast and

example 'substantially central' refers to not along the outside of the multi-core processor but the inside." Resp. Br. at 9 (citing '339 Patent at 2:31-40). The cited discussion is not definitional as to the "periphery," and in no way suggests an intent to explain what "substantially central" means.

Moreover, Redstone's proposed construction allows a "substantially central" area to extend all the way to the periphery of the multi-core processor and would result in a construction that any physical space inside the multi-core processor is located substantially central to the sets of cores. This is untenable, including because Redstone's proposed construction would make the phrase "substantially central" superfluous—any "common region" (as Redstone reads it) is necessarily inside the multi-core processor; the phrase "substantially central" would carry no additional meaning. But <u>all</u> terms of the claim limitation should be given meaning, and a construction that renders these phrases superfluous is disfavored. *See Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (rejecting a construction of "pressurized collection vessel" that would render "collection" entirely superfluous); *see also Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored."). That Redstone cannot even reconcile its own proposed constructions further illustrates the indefiniteness inherent in the term "*located in a common region that is substantially central to* the first set of processor cores and the second set of processor cores."

Redstone's remaining argument that MediaTek's indefiniteness position is inconsistent with its IPR positions should be dismissed for the same reasons discussed above. MediaTek and its expert's representations made during IPR are not applicable here because indefiniteness is not

an allowed ground for challenging claims during IPR. *Intellectual Ventures I*, 2016 WL 4363485, at *9 n.8; *Cellular Comm'ns Equip.*, 2016 WL 2808887, at *9.

### III. CONCLUSION

For the foregoing reasons, MediaTek respectfully requests that the Court adopt its claim construction positions and find the disputed phrases of the '339 Patent indefinite.

Dated: January 22, 2025

Respectfully submitted,

By:   */s/ Christopher Kao*
Christopher Kao (*admitted*)
  christopher.kao@pillsburylaw.com
Brock S. Weber (*admitted*)
  brock.weber@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: 415.983.1000
Facsimile: 415.983.1200

*Counsel for Defendants*
*MediaTek USA Inc. and MediaTek Inc.*

### CERTIFICATE OF SERVICE

I certify that on January 22, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

                                                   */s/ Christopher Kao*
                                                     Christopher Kao