IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>　　　　　Plaintiff,<br>　v.<br><br>MEDIATEK, INC. and MEDIATEK USA, INC.<br><br>　　　　　Defendants. | Case No.  7:24-cv-00029-DC-DTG |

**PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.  Introduction ........................................................................................................................... 1

II. Disputed Terms Requiring Construction .............................................................................. 1

    A.  Term 1: "each processor core from the first/second set of processor cores is configured to dynamically receive a first/second supply voltage [from a power control block] and a first/second output clock signal" .................................................................. 1

    B.  Term 2: "located in a periphery of the multi-core processor" ......................................... 3

    C.  Term 3: "located in a common region that is substantially central to the first set of cores and second set of processor cores" .................................................................. 4

III. Conclusion ........................................................................................................................... 5

# TABLE OF AUTHORITIES

**Cases**

*ESCO Grp. LLC v. Deere & Co.*,
  No. CV 20-1679-WCB, 2023 WL 4199413 (D. Del. June 22, 2023) ........................................ 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898, 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014) ................................................. 2

*Power Mosfet Technologies, L.L.C. v. Siemens AG*,
  378 F.3d 1396, 72 U.S.P.Q.2d 1129 (Fed. Cir. 2004) ................................................................ 4

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed. Cir. 1999) ................................................................................................... 5

*Seigler v. Wal-Mart Stores Texas, L.L.C.*,
  30 F.4th 472 (5th Cir. 2022) ........................................................................................................ 3

I. Introduction

Defendant's reply fails to address the shortcomings noted in Plaintiff's response brief. Instead, Defendant misconstrues Plaintiff's arguments and ignores the disclosures of the patent.

II. Disputed Terms Requiring Construction

    A. **Term 1: "each processor core from the first/second set of processor cores is configured to dynamically receive a first/second supply voltage [from a power control block] and a first/second output clock signal"**

Defendant continues to plead ignorance of "dynamically received" because the specification only discusses "dynamically" in terms of sending. But Defendant has no basis for its conclusion that "configured to dynamically receive" is so mysterious that a POSITA would be left guessing—especially when its only evidence is unreliable. The reality is that "dynamically" is a routinely used term in the art that denotes intentional changes in parameters such as voltage and frequency. The patent explains "dynamically adjusting the power profile for a stripe in response to changes in computational requirements may reduce power consumption for a multi-core processor, such adjustments may take some period of time to stabilize." '339 Patent at 3:16–20. It is that stabilization period that different configurations of both sending and receiving effect. As this is not the focus of the patent, it is left to the skill of a POSITA to provide their preferred configuration. A POSITA would readily understand not only the sending of such signals, as the patent describes, but also the configuration to receive such signals.

The law does not require that every concept be expressly taught in the specification to avoid indefiniteness. *See e.g. ESCO Grp. LLC v. Deere & Co.*, No. CV 20-1679-WCB, 2023 WL 4199413, at *14 (D. Del. June 22, 2023) (Bryson, C.J.) (finding that despite "the specification does not use the [disputed] term," because the specification discloses related embodiments, the disputed term is no indefinite). Rather, it is Defendant's burden, by clear and convincing evidence, to show that the term in question fails to "inform[s] those skilled in the art about the scope of the invention

with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014).

Here, the specification does provide guidance on what "dynamically" means. For example, the patent explains that "dynamically adjusting the power profile for a stripe in response to changes in computational requirements may reduce power consumption for a multi-core processor." '339 Patent at 3:16–20. Cheng uses the "dynamically" in the same way. *See* Cheng at Abstract ("This paper presents circuits that enable dynamic voltage and frequency scaling…"). Indeed, in his IPR declaration regarding the very same patent, Dr. Baker himself uses "dynamically" as a common term meaning the same thing between various prior art references and the patent. *See* Dkt. 31-3 at 41–42; 61–62. Commonly used terms in the art are simply not a basis for a finding of indefiniteness, nor is the patent's focus on one side of process—here, sending—a basis for rendering the corresponding receiving function indefinite.

Defendant's term-of-degree argument likewise falls flat. Defendant argues "dynamically" calls for a comparison against a baseline but offers nothing to support that contention. In the art, "dynamically" is not used in a comparative sense; it has a common meaning that signifies intentionally changing. The only evidence Defendant offers for a contrary reading is the inconsistent testimony of Dr. Baker, which Defendant does not effectively counter.

Instead, Defendant confuses the point by arguing that a party may raise different arguments between this Court and in an IPR proceeding. While Plaintiff concedes that a party may adopt different positions in these forums, the issue is the incompatibility between Dr. Baker's declarations. Dr. Baker tells this Court that "dynamically" has no definable meaning, but he tells the PTAB it can be readily identified in the prior art and that its common usage can form the basis for combining references. *See* Dkt. 31 at 3–4. It is this double-speak that should lead the Court to

disregard Dr. Baker's testimony. *See e.g. Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (providing the "sham-affidavit doctrine" holds "affidavit testimony that is 'inherently inconsistent' with prior testimony" should be disregarded).

Defendant has failed to show that "dynamically," a frequently used term in the art, is so vague that a person skilled in that art could not reasonably ascertain the meaning of "configured to dynamically receive." The patent sufficiently explains the context and purpose of the term. It is clear that it relates to the necessary configurations to receive changing power profiles.

**B.     Term 2: "located in a periphery of the multi-core processor"**

Defendant fails to provide any reliable evidence or persuasive argument that the term "periphery" is a term of degree or that "the multi-core processor" is so vague as to create indefiniteness. In fact, both terms have clear meanings in the context of the claims and the specification.First, "multi-core processor" is not some amorphous collection of circuitry that cannot provide a basis for defining a periphery. Rather, it is the subject of the claims. For example, claim one states that it comprises at least a first set of processor cores, a second set of processor cores, and an interface block. *See* Cl. 1. The specification also provides Figure 1 which discloses control blocks positioned along the sides of a multi-core processor. *See* '339 at 2:31–34. This not only provides all the guidance a POSITA would need as to the scope of "the multi-core processor" but also the "periphery" of said processor. Defendant's attempt to introduce ambiguity with "interface circuits" and "wrap-around connections" where the specification allegedly does not "specify[] the physical location of such circuitry," misreads the specification. In Figure 1, the interface circuit is labeled 120 and the wrap-around connection is 122. *See id*. 2:10-19. These are clearly given distinct "physical location[s]" in the figure. Moreover, Defendant has no basis for its claim that a POSITA would actually be confused by the scope of "multi-core processor."

3

Likewise, Defendant has still offered no evidence that "periphery" is a term of degree. Indeed, their own expert appears to readily understand "periphery" as, at least, "at a position above and away from the" center. Ex. 2 at 85–86. Instead of evidence, Defendant offers hypothetical "critical questions" that do not meet the required burden. There is no need to distinguish "substantially central" from "periphery" since these terms do not appear in a claim together and indeed bear no relation to each other.[1] This does not meet Defendant's burden and "located in a periphery of the multi-core processor" should be given its plain and ordinary meaning.

### C. Term 3: "located in a common region that is substantially central to the first set of cores and second set of processor cores"

Defendant raises arguments that do not result in a finding of indefiniteness. Both "common region" and "substantially central" are terms readily understood by a POSITA.

Beyond never demonstrating that "common" and "overlapping" have the same meaning under any construction of these terms, Defendant fails to show how the canon of claim differentiation results in indefiniteness. As noted in Plaintiff's response brief, claim differentiation will give different terms the same meaning if that is mandated by the plain meaning, not find one indefinite. *See Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1409–10, 72 U.S.P.Q.2d 1129 (Fed. Cir. 2004). Moreover, there is a clear distinction between "common" and "overlapping": "overlapping," as used in claim 9,[2] requires two regions, common refers to just one region. There is no basis to suggest "common region" is indefinite.

As to "substantially central," Defendant relies entirely on this term being a term of degree but makes no showing that the term lacks reasonable certainty in scope. Instead, Defendant makes

---

[1] Indeed, in claim 14 "substantially central" is measured from the "first set of processor cores and the second set of processor cores" not "the multi-core processor."
[2] Claim 9 provides "wherein the *first* region and the *second* region are overlapping *regions* of the multi-core processor."

nearly the same argument, that plain meaning renders "substantially central" superfluous and thus indefiniteness is preferred. It is not. Avoiding superfluous claim language is the same basis for the claim differentiation cannon, it is merely disfavored and cannot support indefiniteness. Defendant can cite no case law counter to this assertion. Indeed, claims are "if practicable, to be so interpreted as to uphold and not to destroy the right of the inventor." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). It is entirely practicable.

The disclosures of Figure 1, in combination with the claim language itself, is sufficient to provide a POSITA a standard for measuring "substantially central." The specification provides for various locations of control blocks along the sides or "in a common area located near the center of the multi-core processor." '339 Patent at 2:31–40. While not definitional, this provides a standard for a POSITA to measure "substantially central." The claim language provides further guidance, placing the control blocks in a common region substantially central to the first and second set of processor cores. Defendant has no evidence that a POSITA would not find this portion of the specification provides sufficient guidance because it is what Dr. Baker cites to the PTAB. *See* Ex. 2 at 87–88, 104–105. Defendant's own expert agrees with Plaintiff that this term is definite.

For these reasons, Defendant has not shown by clear and convincing evidence that Claim 14 is indefinite. Claim 14 should be given its plain and ordinary meaning.

### III. Conclusion

For the reasons provided above, all disputed terms should be given their plain and ordinary meaning. Defendant has failed to meet its burden to show any term is indefinite.

Dated: February 5, 2025                                             Respectfully submitted,

                                                                                     */s/ Reza Mirzaie*
                                                                                     RUSS AUGUST & KABAT

5

Reza Mirzaie, SBN 246953
Email: rmirzaie@raklaw.com
Marc A. Fenster, SBN 181067
Email: mfenster@raklaw.com
Neil A. Rubin, SBN 250761
Email: nrubin@raklaw.com
Christian W. Conkle, SBN 306374
Email: cconkle@raklaw.com
Jonathan Ma, SBN 312773
Email: jma@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Qi (Peter) Tong
TX SBN 24119042
Email: ptong@raklaw.com
4925 Greenville Avenue, Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff Redstone Logics LLC*

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

 /s/ Reza Mirzaie
Reza Mirzaie
